UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JRAKAR J. GADDIS,

   Petitioner,

v.             Case No. 20-cv-815-pp

UNITED STATES OF AMERICA,

   Respondent.

---

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255, DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

---

On June 1, 2020, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 challenging his conviction in United States v. Jrakar Gaddis, Case No. 16-cr-170 (E.D. Wis.). Dkt. No. 1. The motion asserts that the petitioner's guilty plea was unconstitutional and that the indictment "fail[ed] to satisfy elements 18 USC § 924(e)(2)(B)." Id. at 4-7. Because the petitioner plainly is not entitled to relief, the court will deny the §2255 motion and dismiss the case.

**I. Background**

 A. <u>Underlying Case</u>

  1. *Indictment*

On November 22, 2016, the grand jury returned a superseding indictment against the petitioner and co-defendants Ronnie Bethly, Paul Rogers and Lester Brider, alleging a string of bank robberies and Hobbs Act

1

robberies of businesses. <u>Gaddis</u>, Case No. 16-cr-170, Dkt. No. 11. Count Eight of the superseding indictment charged the petitioner, Paul Rogers and Ronnie Bethly with attempted armed bank robbery in violation of 18 U.S.C. §§2113(a), (d) and 2 (alleging that they had robbed North Shore Bank). <u>Id.</u> at 8. Count Nine charged the petitioner, Gaddis and Bethly with brandishing a firearm in furtherance of a crime of violence (the North Shore Bank robbery) in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. <u>Id.</u> at 9. Count Ten charged the petitioner, Rogers and Bethly with armed bank robbery in violation of 18 U.S.C. §§2113(a), (d) and 2 (alleging that they had robbed BMO Harris Bank). <u>Id.</u> at 10. Count Eleven charged the petitioner, Rogers and Bethly with brandishing a firearm in furtherance of a crime of violence (the BMO Harris Bank robbery) in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and (C)(i) and 2. <u>Id.</u> at 11. Count Twelve charged the petitioner, Lester Brider and Edward Williams with Hobbs Act robbery in violation of 18 U.S.C. §§1951(a) and (2) (alleging that they had robbed a Metro PCS store). <u>Id.</u> at 12. Count Thirteen charged the petitioner, Brider and Williams with brandishing a firearm in furtherance of a crime of violence (the Metro PCS store robbery) in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and (C)(i) and 2. <u>Id.</u> at 13.

    2.    *Plea agreement*

On July 7, 2017, the petitioner (represented by Attorney Lew Wasserman) signed a plea agreement. Dkt. No. 67 at 15. The agreement was filed the same day. Dkt. No. 67. The agreement stated that the petitioner was pleading guilty to Counts Eight, Nine, Ten and Twelve of the superseding

indictment. Id. at ¶¶2, 4. It indicated that the petitioner had read and fully understood the charges in the superseding indictment and the "nature and elements of the crimes with which he ha[d] been charged" and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶3. In the agreement, the petitioner acknowledged, understood and agreed that he was guilty of the offenses charged in Counts Eight, Nine, Ten and Twelve. Id. at ¶5. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. The agreement stated that the petitioner understood and agreed that the maximum term of imprisonment for each of Counts Eight and Ten was twenty-five years in prison, a $250,000 fine and five years of supervised release; the agreement stated that he understood and agreed that the mandatory minimum term of imprisonment for Count Nine was seven years and that the maximum penalties were life in prison, a $250,000 and five years of supervised release; the agreement stated that he understood and agreed that the maximum term of imprisonment for Count Twelve was twenty years in prison, a $250,000 fine and three years of supervised release; the agreement stated that he understood and agreed that Count Nine carried "a mandatory minimum of seven years of imprisonment to be served consecutive to any other term of imprisonment imposed." Id. at ¶6. The agreement stated that the petitioner acknowledged, understood and agreed that he "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶7.

The agreement also laid out the elements of the charges. Id. at ¶¶8-10. It said that the parties understood and agreed that in order to sustain the charge of "Armed Bank Robbery as set forth in Counts Eight and Ten of the Indictment," the government must prove beyond a reasonable doubt that (1) the petitioner or his accomplice "took from the person or presence of another money belonging to or in the care, custody, control, management or possession of the North Shore Bank and BMO Harris Bank," (2) the Federal Deposit Insurance Corporation insured the deposits of the banks at the time of the offenses, (3) the petitioner "acted to take such money by force and violence, or by intimidation," and (4) the petitioner put the teller's life in jeopardy by the use of a dangerous weapon. Id. at ¶8. The parties understood and agreed that in order to sustain the Hobbs Act robbery charge in Count Twelve, the government must prove beyond a reasonable doubt that (1) the petitioner "knowingly obtained or attempted to obtain money or property from or in the presence of a person," (2) the petitioner "did so by means of robbery," (3) the petitioner "believed that the person parted with the money or property because of the robbery," and (4) "the robbery affected interstate commerce." Id. at ¶9. The parties confirmed that they understood and agreed that in order to "sustain the charge of brandishing a firearm during and in relation to a crime of violence" in Count Nine, the government must prove beyond a reasonable doubt that (1) the petitioner "committed the crime of Armed Robbery in violation of Title 18 U.S.C. §§ 2113(a), 2113(d), and 2 as charged in Count

4

Eight of the indictment," and (2) the petitioner "knowingly brandished a firearm during and in relation to that crime or in furtherance of that crime." Id. at ¶10.

The agreement confirmed that the petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶7. The petitioner acknowledged and understood that the agreement did not "create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guideline range." Id. at ¶15. The agreement reflected that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶25. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶26. The agreement provided that if it "[was] revoked or if [the petitioner's] conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. at ¶43. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he is in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶44.

### 3. *Change-of-plea hearing*

On August 3, 2017, the court held a change-of-plea hearing. Dkt. No. 77. The petitioner appeared in person with Attorney Wasserman. Id. at 1. The court's minutes reflect that the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him, "recounted that counts Eight and Ten carried a maximum term of 25 years' imprisonment, a maximum $250,000 fine, a mandatory special assessment of $100 per count, and a maximum of five years of supervised release," recounted that "Count Nine carried a mandatory minimum term of seven years in prison (to be served consecutively to any other sentence imposed) and a maximum of life, with a maximum fine of $250,000, a mandatory special assessment of $100 and a maximum of five years of supervised release," and recounted that "Count Twelve carried a maximum term of twenty years of imprisonment, a maximum $250,000 fine, a $100 mandatory special assessment and a maximum of three years of supervised release." Id. The court found that the petitioner understood his trial rights, the penalties associated with the charges in the indictment, the possible civil ramifications of a conviction, and the uncertainty of the court's ultimate sentence. Id. "The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. The court accepted the petitioner's guilty plea and found him guilty of the offenses in Counts Eight, Nine, Ten and Twelve. Id.; see also Dkt. No. 102 at 1.

6

Case 2:20-cv-00815-PP   Filed 12/31/21   Page 6 of 19   Document 2

4. *Sentencing hearing*

On December 22, 2017, the court conducted the sentencing hearing. Dkt. No. 107 at 1. The petitioner appeared in person with Attorney Wasserman. Id. Attorney Wasserman confirmed that he and the petitioner had reviewed the presentence investigation report and the addendum; the government confirmed that it also had reviewed the sentencing documents. Id. The court explained that while the sentencing guidelines in the presentence report were advisory, the law required the court to begin its sentencing analysis with those guidelines and consider their application to the factors in 18 U.S.C. §3553. Id. The court calculated a base offense level of 20 under U.S.S.G. §2B3.1)1(a), a two-level increase under §2B3.1(b)(1) "because one or more of the counts of conviction involved the theft or attempted theft of the property of a financial institution," a six-level increase under §2B3.1(b)(2) because the petitioner and his co-defendants "otherwise used" a firearm during the BMO Harris Bank robbery, a three-level increase under the multiple counts provision of §3D1.4, a two-level decrease under §3E1.1(a) for acceptance of responsibility and a further one-level decrease under 3E1.1(b) for the timeliness of that acceptance. Id. at 2. "This brought the offense level to 28, unless [the petitioner] qualified as a career offender under §4B1.1." Id.

"After a lengthy discussion, the court concluded that technically, [the petitioner] did qualify under the guidelines as a career offender." Id. at 31. "The adjusted offense level of **31** in criminal history category VI yielded an advisory sentencing range of two hundred sixty-two to three hundred twenty-

seven months." Id. Each party presented their respective sentencing recommendations: the government recommended that the court impose a sentence of fourteen years, while the petitioner argued for a sentence of nine years of incarceration. Id. The court concluded that a below-guidelines sentence of one hundred sixty months of incarceration (thirteen years four months) with credit for time served, followed by five years of supervised release, was sufficient but not more than necessary to address the §3553 factors. Id. The court ordered the petitioner to pay a special assessment of $400 but did not impose a fine. Id. The court agreed to recommend that the Bureau of Prisons place the petitioner in a facility as close as possible to the Eastern District of Wisconsin. Id.

"The court advised [the petitioner] that he had a right to appeal, that he had a limited time in which to do so, and that he should discuss his appeal rights with his attorney." Id. A week later, Attorney Wasserman filed a letter. Dkt. No. 100. Attorney Wasserman's letter stated that immediately after sentencing, the petitioner "indicated to [Attorney Wasserman] that [the petitioner] did not desire an appeal." Id. It stated that Attorney Wasserman had explained the court's sentence to the petitioner's mother and sister and had asked them to talk to the petitioner and "immediately let [Attorney Wasserman] know if [the petitioner's] position on an appeal had changed." Id. As of 4:00 p.m. on December 27, 2017, Attorney Wasserman had "no indication that [the petitioner] want[ed] a Notice of Appeal filed." Id. Attorney Wasserman "concur[red] in this decision." Id.

The court entered judgment on January 3, 2018. Dkt. No. 102. The court's judgment reflected the sentence: seventy-six months on each of Counts Eight, Ten and Twelve to run concurrently with each other and eighty-four months on Count Nine to run consecutively to the sentences imposed on Counts Eight, Ten and Twelve, for a total sentence of one hundred sixty months of incarceration. Id. at 2.

  B. <u>Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)</u>

Twenty-nine months later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. <u>Gaddis v. United States</u>, Case No. 20-cv-815 (E.D. Wis.), Dkt. No. 1. The motion asserts three grounds for relief. Grounds one and two assert that the petitioner's guilty plea is unconstitutional. Id. at 4-6. Ground three asserts that the indictment was vague and violated federal law. Id. at 7.

**II. Analysis**

  A. <u>Standard</u>

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court

was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. Grounds One and Two

In his first ground, the petitioner contends that his guilty plea is unconstitutional because "Plea stated the count is a crime of violence for the gun charge however new law states its not, the guilty plea stipulations I plead guilty to, is void due to it conflicts with new law." Id. at 4. His second ground asserts that the "guilty plea is unlawful and unconstitutionally vague" because it "states residual clause and force clause rendering it a crime of violence however new law determines that my stipulated plea does not [satisfy] a crime of violence wherefore guilty plea is void due to the crime of violence elements in guilty plea does not become satisfied it gives no fair notice of the conduct." Id. at 6.

#### 1. *Timeliness*

28 U.S.C. §2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the

> United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The court entered judgment in the underlying criminal case on January 3, 2018. Dkt. No. 102. The petitioner's fourteen days to appeal expired on January 17, 2018. The petitioner filed his §2255 motion on June 1, 2020—two years, four months and two weeks after the deadline for appealing expired. Dkt. No. 1. The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). He has not identified any newly discovered evidence under §2255(f)(4), or asserted that an impediment prevented him from filing his motion under §2255(f)(2).

That leaves §2255(f)(3), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." In his §2255 motion, the petitioner explains that he did not raise his first issue in a direct appeal because "new retroactive law determines my ground is unconstitutional." Dkt. No. 1 at 5. The court suspects that the petitioner is referring to the United States Supreme Court's decision in United States v. Davis, __ U.S. __, 139 S. Ct. 2319 (2019), in which the Supreme Court

11

invalidated a conviction under §924(c). The Supreme Court decided Davis on June 24, 2019. At least one district court in the Seventh Circuit has concluded that Davis recognized a new right that applies retroactively on collateral review, Carter v. United States, No. 16-cv-02184, 2019 WL 4126074, at *5 (C.D. Ill. Aug. 29, 2019), as has the Eleventh Circuit Court of Appeals, In re Hammoud, 931 F.3d 1032, 1037-39 (11th Cir. 2019). The court will assume for the purposes of this decision only, and without deciding, that Davis did recognize a new right and that it applies retroactively on collateral review. If the petitioner filed his §2255 motion based on Davis, it would be timely, because he would have filed it within a year of the date of the Supreme Court's decision.

2. *Procedural Default*

While a claim must be timely, it also must be cognizable. For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) (citing Hale v. United States, 710 F.3d 711, 713-14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Delatorre, 847 F.3d at 843 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

If the petitioner raised the claim on direct appeal, the "law of the case" doctrine dictates that a Circuit Court of Appeals' decision becomes binding

12

when that defendant later raises the same claim through a §2255 motion to vacate, set aside or correct a sentence. Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (citing United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

The petitioner argues that his guilty plea was unconstitutional. Dkt. No. 1 at 3. The petitioner raises this claim for the first time in the §2255 motion.

> A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir.2009). Likewise, a § 2255 appellant cannot raise for the first time on appeal a claim not presented to the district court in the § 2255 proceedings below. *Pierce v. United States*, 976 F.2d 369, 371 (7th Cir.1992). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir.2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir.2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir.2008).

McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Normally, the doctrine of procedural default would bar this claim because the petitioner did not raise it before this court or the Seventh Circuit. But a petitioner may overcome procedural default if he can show that he had cause for his failure to raise the issue earlier and that he suffered actual prejudice. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (citing Bousley, 523 U.S. at 622). A petitioner can show cause for his failure to raise a Davis argument before the trial court. "A change in the law may constitute cause for procedural default if it creates 'a claim that is "so novel that its legal

13

basis is not reasonably available to [trial or appellate] counsel.""" Id. (citing Bousley, 523 U.S. at 622). The Supreme Court decided Davis on June 24, 2019—two years after the court accepted the petitioner's guilty plea and eighteen months after the court imposed sentence. The Davis decision was not reasonably available to the petitioner prior to sentencing; if the petitioner means now to argue that Davis constitutes a basis for relief, Davis could state cause for his default.

But the petitioner cannot show prejudice. Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime.'" Davis, 139 S. Ct. at 2324. The statute defines a "crime of violence" in "two subparts—the first known as the elements clause, and the second [known as] the residual clause." Id. Section 924(c)(3)(A) is the "elements" clause; it defines a "crime of violence" as "an offense that is a felony" and "has as an element the use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B) is the "residual" clause, and defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In Davis the Supreme Court held that the "residual" clause of §924(c)—§924(c)(3)(B)—was unconstitutionally vague, because it required a judge to imagine the "ordinary" circumstances of whatever the underlying crime may

14

have been and then "guess" whether that crime would, "by its nature," involve a substantial risk that physical force against the person or property of another might be used in the course of committing it. See Davis, 139 S. Ct. at 2325-26. The petitioner argues that his guilty plea is unconstitutional because under "new law," no crime of violence supports his "gun charge." Dkt. No. 1 at 4.

The petitioner pled guilty to Counts Eight, Nine, Ten and Twelve of the superseding indictment. Gaddis, Case No. 16-cr-170, Dkt. No. 67. Count Eight charged the petitioner with attempted armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d) and 2. Id. at 2; see also Dkt. No. 102 at 1. Count Nine charged that the petitioner "did knowingly use, carry, and brandish a firearm during and in relation to a crime of violence . . . that is Count Eight of this indictment." Id. Count Ten charged the petitioner with armed bank robbery. Id.; see also Dkt. No. 102 at 1. Count Twelve charged the petitioner with Hobbs Act robbery. Id.

> Under 28 U.S.C. §2113(a),
>
> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

15

> Shall be fined under this title or imprisoned not more than twenty years, or both.

Under 28 U.S.C. §2113(d),

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

In <u>United States v. Armour</u>, the Seventh Circuit held that a "conviction for attempted bank robbery under 18 U.S.C. § 2113(a) satisfies the elements clause of the definition of the 'crime of violence'" under §924(c)(3). <u>United States v. Armour</u>, 840 F.3d 904, 908 (7th Cir. 2016). There is no indication that the Seventh Circuit has overruled its decision in <u>Armour</u>, or that <u>Armour</u> is no longer controlling law. In <u>Haynes v. United States</u>, the Seventh Circuit reaffirmed <u>Armour</u> and recounted how it subsequently "adopted that approach for all convictions that arise under a jurisdiction's general attempt statute." <u>Haynes v. United States</u>, 936 F.3d 683, 692 (7th Cir. 2019) (citing <u>Hill v. United States</u>, 877 F.3d 717, 719 (7th Cir. 2017)). The Seventh Circuit cited its decision in <u>Armour</u> as recently as June 14, 2021. See <u>United States v. McHaney</u>, 1 F.4th 489, 492 (7th Cir. 2021).

The petitioner's conviction for attempted armed bank robbery constitutes a crime of violence for purposes of §924(c). He has not shown that his conviction for brandishing a firearm during that crime of violence is unconstitutional or unlawful. For those reasons, the petitioner cannot prevail on grounds one or two regardless of procedural default.

16

C.   Ground Three

The petitioner argues the indictment is vague and "fails to satisfy elements 18 U.S.C. §924(e)(2)(B)" because "[t]he charging indictment stipulated a vague residual clause on my prior violent felony charges which is inadequate to [satisfy] the elements in charging statute where ordinary people was not given fair notice of the conduct the law punishes," id. at 7.

To the extent the petitioner argues that the superseding indictment is unconstitutionally vague or failed to state the elements of an offense under §924, the court will deny relief. The plea agreement described the four counts of the superseding indictment to which the petitioner agreed to plea. The agreement indicated that the petitioner had reviewed the plea agreement with Attorney Wasserman. The petitioner signed that plea agreement. Attorney Wasserman signed the plea agreement. The court held a change-of-plea hearing and reviewed the agreement with the petitioner and Attorney Wasserman. The court held a thorough colloquy with the petitioner, including discussing with him the elements the government would be required to prove beyond a reasonable doubt had the case gone to trial. An argument that the superseding indictment failed to state an offense under §924 "not only *could* have been presented by pretrial motion but also *had* to be so presented under Fed. R. Crim. P. 12(b)(3)(B)(v), which provides that 'failure to state an offense' is the sort of contention that 'must' be raised before trial." United States v. Wheeler, 857 F.3d 742, 744 (7th Cir. 2017) (emphasis in original). The entry of a guilty plea constitutes a waiver of this claim. Id.

17

If the petitioner means to challenge as unconstitutionally vague the statutes underlying the charges to which he pled guilty, the court will deny relief. A guilty plea—alone, and without an express waiver of appellate rights—acts as "a waiver of an as-applied vagueness challenge to the constitutionality of the statute of conviction." Oliver v. United States, 951 F.3d 841, 845 (7th Cir. 2020) (citing United States v. Phillips, 645 F.3d 859, 862 (7th Cir. 2011)).

The court will deny the petitioner's motion and dismiss the case.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the §2255 motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence plainly does not entitle him to relief under 28 U.S.C. §2255(a).

## IV. Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct the sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of December, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**